call the first case. 13-1420 people versus every person. Would both attorneys that are going to argue, please step up and identify yourselves for the record. Sam, Assistant State's Attorney Kettering. All right. Good morning to each of you. All right. Your name is me. Step up and proceed with your argument. May it please the court. Once again, my name is Sam Heyman. I'm an assistant appellate defender and I represent the appellant, Avery Kirkland. At Avery Kirkland's bench trial for aggravated battery, defense counsel promised the court that she would hear the complaint that indulged himself in crack cocaine in the date of the offense. The complainant had given multiple inconsistent accounts of the incident, some of which explicated Mr. Kirkland, and that she would hear from numerous character witnesses in the community who would all testify to Mr. Kirkland's peaceful nature, that he didn't have a violent vote in his body, and that they were shocked and appalled that he was charged with this crime. Those two points were the linchpin of defense, that the complainant was incredible and that Mr. Kirkland's character was inconsistent with the crime charged. Unfortunately, trial counsel failed to support either of those two points with the most important evidence at his disposal, even though competent defense counsel could have easily introduced evidence on both. Because this case was a pure credibility contest and the deficiently omitted evidence either severely impeached the complainant or bolstered Mr. Kirkland's version of events, Mr. Kirkland was prejudiced and this court should remain for a new trial. But that was just opening statement though, right? So that's not really evidence, just indicating that what the evidence is going to show. Well, Your Honor, he also attempted to lay a foundation to impeach the complainant with the fact that he had cocaine in his blood on the day of the offense. It would have been unethical for him to even attempt to lay that foundation unless he had evidence to that effect. In terms of the character witnesses, it's clear that they existed, that he had spoken with over 15 witnesses. He introduced their evidence of sentencing and the court found that evidence believable and persuasive. Did the lab report show up anywhere in the record? The lab report is not on the record on appeal. Although, as I said to Justice Reyes, its content is clear from the record because it would have been completely unethical for him to ask certain questions that he did ask and that the state did not correct during the trial. Well, one of the things that the state complains about or responds to is that they're saying that we can't go outside the record and look to see if there really was this lab report when it's not in the record. What do you say to that? Well, again, I say that it's clear enough from the record and I'd also refer you to People v. Vera and People v. Williams where those were reversals for ineffectiveness. In Vera, it was the counsel's failure to introduce his  had that exculpated the defendant. That's not in the record on appeal, the Spanish conversation nor the English translation that he should have authenticated. And yet the court found that the record was sufficiently clear to reverse for ineffectiveness. Well, what would the lab report show? Since we don't know, how can we guess what it would show? Well, counsel asked this question on page S52 of the record. He said, isn't it true Carlos Motley was sent to have a lab done and he tested positive for cocaine? And what did she say? Or that was the state? The state wouldn't know, that was defense counsel. Right, but was there a response allowed? No, the state objected because counsel had not subpoenaed the correct witness to prove up the statement, which is their right, but... Then how do we know there's really a lab? Because the state never corrected the record, which they would have had an obligation to do under the rules of professional conduct. And more importantly, defense counsel, it would have been blatantly unethical for him to ask that question if he did not have the report that showed the complainant had cocaine in his blood. Let me go back to the first thing you said, that the state would have to correct the record. Why would they have to correct the record based on a question that the defense counsel asked? Any officer of the court has an obligation to correct misrepresentations to the court. Well, what are you citing for that? I'm not sure I'm following that line of argument. It's Rule 3.3b. Of the Code of Professional Conduct? Yes, the Rules of Professional Conduct. And what does that say exactly? It says something to the effect of whenever a lawyer is aware that a misrepresentation is being made to the court, it has an obligation. The lawyer has an obligation to correct that misrepresentation. And Rule 3.3 is the rule of candor towards the charge. Okay, so you're using that to argue that it was clear that there was a lab report? Lab report showing the complainant had cocaine in his blood on the day of the defense. Do we know if it was metabolites? Do we know how much it was? Do we know what amount or anything? No, we don't know the exact amount of cocaine, the metabolites, the grams per milliliters, or however they measure that. But we, again, I'd refer you to people. Then wouldn't this be maybe left best for a post-conviction petition? When you don't, I mean, I don't know that we can speculate about the presence of cocaine, but so wouldn't it be best left for a post-conviction petition? No, Your Honor, this is right for adjudication and direct appeal. Counsel's deficiencies are clear from the record. If you look at People v. Williams, again, counsel was found ineffective for failing to impeach the victims by omission. It was a robbery case. One of the issues at trial was whether the defendant had threatened that he had a gun. It was aggravated robbery. And at trial, the victim testified that he had, throughout the robbery, insinuated that he had a gun, but they apparently did not mention that in the police reports, the statements they gave to police. Now, the police reports are explicitly not in the record on People v. Williams, and yet this Court reversed remanded for counsel's ineffectiveness for failure to prove up the impeachment. I have a question regarding the witnesses. It's not clear. Why were the defense witnesses not called these character witnesses? That's exactly, that's a great question. It's not clear why he didn't call any of them. During sentencing, were they present in court or? Some of them were listed on the answer to discovery. It's not clear if they were in court during trial. That's not clear from the record. Lawrence Hatter was in court on one of the occasions. He could have proved up impeachment, which is a somewhat different issue, but counsel tried to justify his failure at sentencing to call the witnesses during the guilt phase. And he said that he was worried that due to some, and I emphasize some, some of the witnesses' limited education, that he was afraid they wouldn't be able to withstand cross-examination. But again, that's not a strategic decision as regarding all of the witnesses, because he only. But generally, the decision whether to call a witness is considered strategy as a general rule. As the general rule, and of course, there are exceptions. Yeah. I'd also refer you to Brian's, where defense counsel was alleged to be ineffective during post-trial motions. He had promised an opening that he would call the defendants to testify, and he promised to recall some of the state witnesses, because his cross-examination was going beyond the scope. It was cut, it was shut down. But when the state rested, he rested, did not present any case. But during post-trial motions, when his ineffectiveness was alleged, he defended himself and said these were all strategic decisions. I didn't think it was in the defendant's best interest to testify, and I believed I had elicited enough of my theory on cross-examination. The Fifth District took him at his word and said, well, clearly it was a strategic decision, but in order for a decision to be virtually unreviewable, it has to be both strategic and sound. And it was totally unsound to advance a consistent theory throughout trial, just as here, but then fail to support that theory with the most important evidence at your disposal. Well, wasn't the most important evidence the co-defendant and the defendant himself, as far as, you know, the defense case? Well, those were, yes, Your Honor. And they were both called? Yes, and that was very important evidence, and that's why this was, the counsel's failure, in other respects, made this prejudicial, because... But at the end of the day, didn't the judge actually pick out one witness that he, or she rather, she, Judge Simmons, she decided was more credible, and that was the woman who lived at the house where he was, the defendant was shoveling the snow? Yes, Your Honor, Judy Taylor. Didn't she say that she opened the door and saw Mr. Kirkland with a white pole, like pole in his hand, standing over the victim? That was her testimony, yes. Doesn't that kind of contradict everything that the defendant and the co-defendant said, as far as, he didn't have a weapon, he didn't hit him, he didn't do anything? Well, importantly, she didn't witness the actual... So our position, obviously, is that if counsel had introduced the lab report, thoroughly impeaching the complainant, and if he had perfected his impeachment of the complainant with his inconsistent accounts, the whole credibility determination would have been different, and the judge could have either found some way to view Ms. Taylor's testimony consistent with the defense theory, or just disregarded it as perhaps... Wasn't the attempt to introduce the cocaine, part of it was to question the perception of the victim? Exactly. All right, and then he did cross, or she crossed, the witnesses that claimed they observed the incident? Correct? Which witness, Your Honor? The witnesses, Ms. Taylor and Ms. Riley. Oh, yes. And isn't it a fact that during the cross-examination, counsel did such an effective job that the court indicated that the witness's credibility was in question? The court found that Charlita Riley was not the most effective witness in counsel's cross-examination. But counsel, a single failure of counsel can be the grounds for an effectiveness claim, as long as that failure, that deficient failure of prejudice is defended. Notably, the judge found ultimately that Motley was credible enough that she believed that Mr. Kirkland was a principal and had hit him with a baseball bat. If he had been, and as you said, that the lab report was important because it cast doubt on his perception because cocaine is a psychoactive drug, but also because it would have undermined his credibility as a drug user, which is people be strother. But that came out, didn't it? That he had a history of cocaine use for five years. Yes, Your Honor, a history, but it was not, he, the triage nurse could not testify that it was ongoing and the lab report. What did she say about him as far as his physical condition that she observed that day? She said that he was alert. And oriented. And oriented, yes. I mean. So how does that cut against this idea that he was somehow under the influence of cocaine? Let's admit that alert and oriented in a medical context is perhaps different than in whether someone is correctly perceiving what events, especially when, and they're all related, when he apparently told people in medical personnel that three people had assaulted him, not two, and the only evidence was that two people were present. And when he also apparently told people in the community that Mr. Kirkland had never struck him, but he was going to make him pay anyway. Well, I think I kind of go back to this idea that without the lab report, I don't really know how we can sort of make any decision about whether or not this evidence would be supporting anything that, you know, you're arguing on appeal. Well, again, Your Honor, I would just say that. Was it ever identified in the record, the lab report? Probably not. It was not in the record of appeal, certainly. It was tendered, though, in discovery, I'm assuming. Yes, or perhaps in response to a defense subpoena, but it was tendered to both sides, yes. All right. Let me ask you this. You know of any Illinois case or any case in the whole United States where the lab report's not part of the record and a court can say that that's an effective assistance for not introducing it when the court doesn't have a chance to even look at it? Well, again, Your Honor, I'd refer you to People v. Williams where that was the case where counsel attempted to impeach by omission and the police report, the appellate court said we don't have the police reports in the record, but still they found it sufficiently clear from the record that counsel should have perfected the impeachment and reversed for an effective assistance to counsel. But that has nothing to do with a report on whether a person had cocaine. Does that mean that if a victim has cocaine, you can beat him with a baseball bat? No, of course not, Your Honor. So what difference does it make? Where's the prejudice? Well, it's prejudicial for three reasons because, as Justice Reyes pointed out, it casts doubt on his ability to perceive. The testimony of drug users is subject to suspicion under Strother in later cases, and it would have shown it to be a liar in court because he was asked subject to being able to prove it up. Isn't it true that your blood was drawn and it came back positive for cocaine? He said no. The complainant said no. That answer was struck from the record, which the state had the right to do, obviously, as counsel couldn't prove it up. But if the answer, if counsel was effective, knew the rules of evidence, he would have been able to prove up, perfect the impeachment. The answer was good. That kind of requires a question now. So he was asked, was his blood drawn? He said it was, right? He said it was a compound question. He said the question was, I believe, what was your, did you have blood drawn, did it come back positive for cocaine? Okay, so is it possible that it came back negative? We don't have the lab report. That's a problem, isn't it? Again, Your Honor, on S-52, if he asked this question that is painfully inappropriate for him to ask this question, if he doesn't have a lab report for the effect, if he asks, isn't it true he was sent out lab done and he tested positive for cocaine? That was the question of the triage notice. Yeah. So clearly the report exists, clearly it shows that he had cocaine in his blood. Well, that I don't know. Okay. All right. So you want us to take almost judicial notice of something that we have never even seen? No. Why wasn't it attached to the record? As you know, Your Honor, often discovery materials don't make it into the record on appeal. I know, but when you consider that document so important that it's, you're claiming it should, you know, that we should reverse a trial court's finding, isn't it important enough to put in the record? Well, the trial court made no finding about the lab report because she didn't have the benefit of, and she was very scrupulous, but only considering properly admitted evidence, which is correct. But you're asking us to reverse the trial court and say that this is ineffective assistance to counsel? Yes, reverse. And how can we do that without ever seeing the report? I mean, isn't it your obligation to make sure that that report's part of the record? Well, for the same reason that the, you should reverse for the same reason the appellate court in Williams reversed without the benefit Williams has nothing to do with this case. I believe it does, Your Honor, because again, the facts again, it was a robbery involving a gun. The testimony trial, the victim testified that the defendant had implied that he had a gun in the course of the robbery. Yes. Apparently the victims have made statements to police where they omitted any reference to that in the police reports. Counsel never called the police to prove up the impeachment and the police reports were not in the record, but the appellate court still reversed just as here where I agree we don't, it would be great if we had the, but didn't that in the Williams case, didn't the facts show that the police officers had information that would actually impeach the victim? Wasn't there a reference that in the police reports, the victim did not tell the police officers that there was a gun? Well, that was certainly the implication, but just as here, the actual report was not on the record and the police were not called to perfect the analogous, your honor. Well, well, a police report, can somebody offer such a thing in evidence? They could have, well, you should have called the police officers and if they, but the report doesn't go in evidence. I've never seen a case in my whole life. I've been around for over 50 years. It wouldn't come into evidence, your honor, you're correct, but neither would the lab report here necessarily, but he needed to call the correct witness to testify to the results of the blood draw. Well, the lab report would have to come into evidence and would have to be, there'd have to be an appropriate foundation and there'd also have to be someone that could testify, I mean, to that result. But I mean, what you're asking us to do is to speculate on something. I don't believe the speculative at all, your honor, for the reason that, again, the state never disputed that the lab report existed and said what counsel represented multiple times it contained. So for that reason, I think the record is sufficiently clear that you can find that counsel was ineffective for failing to introduce the lab report, which was crucial to his case. But we don't know why. We don't know why counsel didn't introduce the lab report. The record's not clear on that point. I disagree, your honor. The record is clear because he repeatedly tried to introduce the lab report, he just didn't know how. That is totally clear from the record. And I refer you to House and we are where unfamiliar unfamiliarity with the rules of evidence was found to be an ineffectiveness of counsel. So you think the record shows that when he was examining the nurse that he had the lab report in his hand? Yes, or at counsel's table, sure. He just didn't know that the nurse was not the appropriate witness to authenticate it. Now, what about these other witnesses? You also argue that the failure to call the witnesses who would testify that he had a reputation for being a peaceful and law-abiding citizen, that they would have changed this outcome. How so? Well, again, the standard is only that there's a reasonable probability that it would have changed the outcome, which doesn't even have to be 50%. And that's subject to this court's inoverview. But, you know, he was an atypical criminal defendant, a 59-year-old man with no criminal record, no felony criminal record, no violent criminal record. Doesn't that come out from the he obviously testified if he had any background that probably would have come in. That's true, Your Honor, but we have we have a rule of evidence for a one for a reason, because this testimony can be probative in certain cases. And if any, if there's any case where it would have been probative, it would have been this one where again, these witnesses, some of them had known him for decades. He would have testified that he has no violent bone in his body and that they were shocked and appalled that he was charged with this crime. Well, the evidence also shows that he actually had his phone taken, right? Didn't he agree to that, that his phone was taken? Yes. And didn't the facts also show there was a bat in the car? Yes, but there was a totally innocuous explanation for the bat being in the car. Well, was there any innocuous or I suppose there was for the white pipe too. Well, didn't the court kind of say that she was basing her decision on the end, the testimony of Ms. Taylor at the end of the day that she was, she said she was objective and that she testified that when she opened the door, she saw Mr. Kirkland standing over the victim on the ground and that he had this white pipe in his hand. Well, again, her testimony was certainly not sufficient to prove the crime charged by itself. No, but it corroborated the other evidence basically that there was certainly a fight. There was certainly some altercation that the victim was obviously on the ground at some point. So I mean, again, if the deficiently omitted evidence had made it into evidence, if counsel had acted effectively and known the rules of evidence, the whole credibility determination would have changed. And so again, we're not saying that certainly Mr. Kirkland would have been found not guilty, but all we need to show at this stage is a reasonable probability that the outcome of All right. Would you like to add anything further at this point or save time for rebuttal? I'd like to save a few minutes for rebuttal, Your Honor. Thank you. All right. Thank you. Mr. Kovach. Have you ever argued here before? No, Your Honor. Oh, well, welcome to the appellate court. You may proceed. Thank you. May it please the court. Again, Assistant State's Attorney, Katarina Kovach on behalf of the people. Defendant in the instant case argues that his trial counsel was so ineffective that he is entitled to a new trial. Defendant, however, cannot be entitled to a new trial where he cannot meet either prong of the Strickland ineffectiveness test. First and foremost, defendant cannot show that his counsel's alleged ineffectiveness prejudiced him in light of the overwhelming evidence of defendant's guilt presented at trial. There was the testimony of the victim, which was corroborated by two independent witnesses. The victim testified that the defendant and the co-defendant attacked him, that the co-defendant hit him in the legs and brought him down to the ground. The defendant then hit him over the head with a bat so badly and so hard that the victim had to get seven stitches at the hospital. His testimony was Judy Taylor, who was the woman whose driveway the victim was shoveling. Well, is she really that objective when it's apparent from the record that she had a long-standing relationship with Mr. Motley? Yes, Your Honor, with the victim. Absolutely. Isn't she really a good friend of his? Doesn't that come out through the record? Yes, Your Honor. To a certain extent, it does come out of the record that they have known each other for a very long time. However, the trial court, as the trier of fact in this bench trial, made a credibility finding with respect to Judy Taylor and found her to be a credible witness. Yes, but when you say the evidence was overwhelming, isn't this more like a case where it's a credibility contest? Yes, Your Honor. It was largely a credibility contest. However, there was no identification issue in this case. The victim consistently from the very beginning... Yes, Your Honor. I grant you that, but that doesn't mean that it's overwhelming evidence. It means that everybody knew everybody. Yes, Your Honor. Every single witness here knew everybody else except for Codefendant Spivey, who testified that he had never met the victim before and for some reason he picked a fight with him on that day. Well, he said that the reason he hit him was because Mr. Motley disparaged him. Your Honor, the trier of fact in this case made the credibility finding. She strongly believed that this entire case revolved around the defendant's belief that the victim stole his cell phone the previous day and that he wanted to get back at the victim. Yes. Where's the white pipe? Yes, Your Honor. There is no white pipe and it is true that Judy Taylor... But isn't that what Ms. Taylor said and didn't another witness say that it was white? I am not certain, Your Honor. I know for sure that Judy Taylor did identify it as a white pipe. However, there's no question that it was. I thought one of the police officers said that one of the witnesses also described it as white. It might have been Judy Taylor. But the pipe was never located. No, Your Honor. It's a baseball bat that's found in the car. Exactly. So doesn't that also suggest this isn't really overwhelming evidence? When you have a complete dearth of this white pipe and that's the one witness that the judge says is the most credible? Your Honor, this is not a dispositive issue in the instant case because Codefendant Spivey himself testified and identified People's Exhibit Number 4 as the bat that he used in beating the victim. Judy Taylor was at a... So that's really in direct conflict with what Ms. Taylor said, isn't it? Because she said it was white. Your Honor, the pipe was shown, there was a picture shown, People's Exhibit 4, which the pipe was beige, black, and red. Yes. From a distance. I thought it was silver, black, and red. I thought it was one of those metal baseball bats. It was an aluminum. Aluminum baseball bat. Yes, Your Honor. In the instant case, even if Judy Taylor may not have exactly seen what weapon was used, she did see the most important part of this incident, which was the defendant holding the weapon, standing over the bleeding victim immediately after the beating happened. What do I ask you about the lab report? Okay. They claim that counsel was so ineffective it wasn't able to get the lab report in, and that it was going to be used for two purposes, one for credibility and one for perception, right? And we know that there's an issue with regards to the witnesses, even the victim, indicating there was three possible assailants. So the fact that the lab report wasn't introduced into evidence, wouldn't that have changed the outcome here and the defendant? Absolutely not, Your Honor. First of all, the defendant cannot show that there is any sort of a nexus between the victim having some unspecified amount of cocaine allegedly in his system on the day of the incident, specifically because... But didn't he say he thought there was three people that beat him up? Yes, Your Honor. That is alleged. This is, again, outside of the record and not in front of this court. Well, is there a medical report of any kind that suggests that or not? That is what the Defense Council claimed at trial. He was attempting to impeach the... But that report's also not in the record? Yes, Your Honor. And that was the medical record from the nurse? The triage report? Yes. From Nurse Banks. She did testify as to that report. Was that where this supposed statement was about three people? No, Your Honor. I believe that was a separate laboratory report. Separate laboratory report? I believe so. That had this information about... A separate medical report, which, again... It's not in the report that the nurse was referring to? As far as we know. This would be, again, this is outside of the record and is not before this court. In addition, the trial counsel was effective because trial counsel did impeach the victim's credibility by presenting evidence that he had a five-year history of cocaine use. And as... But isn't the question whether his perception was impaired on the day of the incident? Yes, Your Honor. And it is clear from the record that the victim's perception was not impaired on that day because he consistently, from the very beginning, identified the defendant as the person who hit him. The trial court, as the trier of fact in this case, found the victim's testimony that the defendant hit him with the bat to be clear. And this is a quote from the record. She had found the victim's testimony to be clear in this respect, Your Honor. In addition, as defense counsel or appellate under cited Strather, in Strather, the court found that the testimony of a narcotics addict is subject to suspicion due to the fact that habitual users of narcotics become notorious liars. This evidence that the victim was a drug addict and had a five-year history of drug addiction was presented by trial counsel at trial. Well, it really wasn't explored in terms of how recent it was or not recent. Yes, Your Honor. So how do we know this person was even an addict from this evidence if it wasn't properly introduced in terms of a time frame? Your Honor, we don't. And again, this is outside of the record, but Nurse Pamela Banks did testify. So would you agree that these things would be properly raised in a post-conviction petition? Yes, Your Honor, absolutely. And defendant could have raised this from the moment that he was convicted and sentenced in a post-conviction petition. Well, what do you say to Mr. Heyman's argument that this lawyer called how many people at the sentencing hearing to say he was a, his reputation was for peacefulness or whatever they, they testified about what a nice guy he was and that he hadn't really ever done anything like this and they couldn't believe it, didn't they? The trial counsel presented various letters from these witnesses. The letters, that's right. Yes, Your Honor. But don't the letters indicate the sort of statements or suggestions that he's presented? Mostly these letters indicated that the defendant was a hardworking man who was honorable and fulfilled his contract. There was really... Okay, so there wasn't really any information in any of the letters. Are they in the record? They are in the record. All right. And do any of those letters indicate what counsel is arguing then, that he had a reputation in the sense of peacefulness or non-violence? There was only one witness or one individual who wrote a letter and which was Angela Buckley. Yes. She was the only one who identified the defendant as a peacemaker, who had not, whom she did not know to be in a fight or to get into a fight. However, trial counsel did present this evidence in trial. Defendant himself testified that he was a hardworking man. He had a family... What was the reason this case was continued so many times when all these defense witnesses were there? Do you have any idea? Your Honor, I do not know. The record doesn't shed any light on that? Your Honor, I'm not certain why that was... It was continued multiple times, wasn't it? Where people were standing there with subpoenas and the judge had to keep reminding them that they had to come back to court on multiple occasions? Yes. So obviously the state wasn't ready because the defense had all their witnesses there multiple times. Isn't that right? We wouldn't be speculating because this is not in the record, Your Honor. No, but the defendant was present in court. I don't remember that it was Spivey or Spivey. He was in the penitentiary, wasn't he? So he wasn't really subject to the subpoena. They just had to make sure they brought him in when the state was ready for the trial. Yes, Your Honor. Yes, Your Honor. And we don't know why the witnesses weren't called on the day of trial. We do not know, Your Honor. But it does, the record, the one thing it does indicate is that this was a matter of trial strategy. As you mentioned, many of these witnesses were under subpoena. But what is the trial strategy, I have to ask, of a lawyer getting up in front of the judge at the beginning of the bench trial and saying that he's going to do all these things and then he doesn't do them? What is the strategy there, other than looking like an idiot? Your Honor, we could only speculate, but trial counsel did present the most important evidence of the defendant's innocence. Was that Spivey or Spivey? Yes, Your Honor. Well, the judge didn't believe that person. And besides, he already pled guilty. You know, he was doing his time. I don't know that his testimony was worth anything. So that's kind of your classic biased witness, isn't it? Yes, Your Honor. But many of these other witnesses knew the defendant for years and years. They were family or very close friends of the family. It is questionable how persuasive they would have been to the judge. Well, didn't she say in her sentencing that it would have been nice, or something like, if I had heard these people before, or I believe what they're saying about him? Didn't she indicate that in her, when she sentenced him? Yes, the trial judge stated that in light of all of these letters and what they indicated, she believed those letters. She believed that the defendant might not have been the worst human being ever, but she also found that the defendant lost it over a stolen cell phone. And that is why this entire incident happened, which is really what's at issue in this case, is the incident at issue. The defense counsel presented the best evidence that he could have of the defendant's innocence. Well, what about the lab report? I mean, if it's out there, isn't that ineffective to say that, you know, you're going to hear that he was using cocaine that day, and then the lawyer, doesn't it appear from the record that the reason it didn't get in was because the lawyer didn't know how to do any of this? Yes, Your Honor. Even though the judge kept telling the lawyer, you know how to do this, but the lawyer really didn't know how to do it? Yes, Your Honor. But even if that report had been introduced by trial counsel, it would not have made a difference in this case. Well, how can you say that? Because the victim's credibility and perception were undermined by trial counsel's introduction of Pamela Banks' testimony that the victim had a five-year history of cocaine use, which does undermine an individual's credibility. And as Ray has said, isn't the significant time, his perception that particular day, as opposed to five years past or five years, and there's evidence about the suggestion that when he was at the hospital, he said there were three people who attacked me. Yes, sir. So don't those things suggest that maybe his perceptions weren't very good and that the evidence of cocaine use that day could have reasonably changed the outcome? No, Your Honor, because in the instant case, just because he said that three, allegedly said that three people hit him after he had been hit on the head with a bat so hard that he had to get seven stitches, would not have undermined his identification of the defendant as the individual who hit him over the head with the bat, which the trier of fact in this case, the trial judge in the bench trial, found to be clear. This other evidence that defense counsel attempted to introduce into evidence would not have undermined this consistent account by the victim from the very beginning from what he said to Officer Frasco's when the after the incident happened to what he testified to a trial. This would not have been undermined by an alleged statement, which is not in front of this court, which is outside of the record, that maybe three people hit him instead of two. All right. Well, your position primarily is is that these things aren't in the record and that we can't reasonably conclude that they would have made a difference when we don't know really what they are, the evidence would be rather. Yes, Your Honor. In addition to that, defendant cannot overcome the strong presumption that in the wide range of reasonable performance, as I mentioned before, trial counsel presented a viable, consistent defense by presenting the testimony of the defendant and the co-defendant. Specifically, the co-defendant not only took the blame for this beating for this entire incident, counsel also presented testimony in this specific case, not from individuals who were not eyewitnesses to this incident. He presented testimony that the defendant was a peacemaker. Co-defendant testified that the defendant tried to stop the fight. As such, this was the strongest evidence counsel could have presented. In addition, trial counsel thoroughly impeached every single state witness that testified at trial. First and foremost, he impeached the victim with his history of drug abuse. He also impeached Charlita Riley to such an extent that the trier of fact found that Charlita was not the most credible witness. How was she impeached? She was impeached with her prior statements that she had given immediately after the incident. She initially stated that both the defendant and the co-defendant were hitting the victim, and at trial she testified that only the defendant was hitting the victim, that she did not see him. But in all of this, Charlita did testify that the defendant was involved in this beating, and that is something that the trier of fact could take away. In addition, the trial counsel impeached Judy Taylor with, as we mentioned, the weapon and what the weapon looked like. In light of all of this, and in light of the fact that trial counsel managed to get defendants acquitted of three out of the four charges which alleged more serious bodily harm, such as permanent disfigurement, defense counsel cannot be said to have been ineffective, Your Honors. In light of the counsel's effective overall representation and the overwhelming evidence of the defendant's guilt in the instant case, defendant is not entitled to a new trial. For these reasons, and for those stated in our brief, we respectfully request that you affirm the defendant's conviction and sentence for aggravated battery. Thank you.  Mr. Heyman. The evidence in this case was not overwhelming at all. There was no video of the incident, no fingerprints from the baseball bat. The co-defendant specifically came to court after pleading guilty in his own case and admitted that he was the only one who struck Mr. Motley, and the reason for that was because, as you said, Justice McBride, the complainant had disparaged him. Just because counsel did a decent job in some respects of his representation, and just because he somewhat impeached Motley when tons of impeachment was available, doesn't mean that he was not ineffective for failing to impeach Motley with the most powerful evidence at his disposal. But don't we have to look at his entire performance? You need to look at all of his performance. A single deficiency, if it prejudices him, which means a reasonable probability that it is a different outcome, a single deficiency can result in an ineffectiveness claim. And I refer you again to Bryant, where... And do you know a citation that says a single deficiency is what we look at, not the entire performance? I know there are U.S. Supreme Court cases to that effect, Your Honor. I could supply it to the Court later if you're interested. I just don't recall it. I recall the United States Supreme Court and the Illinois Supreme Court always saying you look at the entire performance. If there's a single, you know, the Strickland test is the test. If there's a single deficiency, a single unreasonable error that minimally effective counsel would not have made, and that single error leads to a question that undermines confidence in the outcome trial, that's an effective assistance of counsel. Well, I guess if it's so severe that it causes prejudice, then when you look at the entire picture, you see that the entire picture shows that the error was so severe that it caused prejudice. I mean, that's the only way you could look at it. Well, that's correct, Your Honor, but also we maintain that there were three, at least three, objectively unreasonable errors in this case, and that compounded it adds up to prejudice. Well, I just want you to respond to Ms. Derkova's statement that the letters show that really only one person had any opinion about his peacefulness, and that therefore to say that there were all these witnesses he should have called isn't really even reflected in the letters. Well, obviously our position is he should have called the witnesses and had them testify. Live witness testimony is more compelling than these dry letters, and he could have directly asked them about Mr. Kirkland's reputation. But again, he directly represented a sentencing that he'd spoken to all these witnesses, and they're all shocked and appalled that Mr. Kirkland was charged with this crime because, and he would personally never believe that Mr. Kirkland was guilty of this. Well, is it ineffective for the lawyer to try to put the case in as best of light as he can? Is that ineffective? Yeah. No, I don't think so. When he was arguing there were all these people, maybe that's all he was doing, was trying to put this case in its best light. Well, I think if he submitted these eight letters, so at least eight witnesses were available to him. Right, but they were eight, eight of those witnesses of the, seven of the eight were really more about that he was a hard-working guy, supported his family, you know, honored his contracts. That doesn't really go to his reputation for being a peaceful and law-abiding citizen, does it? Well, it was persuasive nonetheless, but if he had called them, which he should have, he could have directly asked those questions, which he should have. But then, again, is that information in the record, or is this something best left to a post-conviction petition? Because we don't have information in the record then about these multiple people who would have said this. I don't know that that's in the record either. But the record is sufficiently clear with the, at least the one woman who said he was a peacemaker among the peers and that, and you can read into some of the other letters. Again, the live testimony would have been much more compelling, but you can read in, you know, shovels snow for widows and things to that effect, that this is a man, a gentle man who, a responsible man who follows the law, who does not beat people in the head with baseball bats. But wouldn't you call that trial strategy if you don't call these witnesses in to testify live, and then just have the letters submitted because you know that if they open up to cross-examination, that their credibility may be called into question? Well, again, he did make that strategic explanation regarding some of the witnesses, and then he said he'd spoken to over 15, and not a single one said they believed that Mr. Kirkland was, that this was in his nature to do this sort of thing. So you wouldn't call that trial strategy? To the extent that some of them, he didn't call some of them for that reason, that's strategic. We submit it was unsound even to those witnesses, but certainly was not strategic to the ones he gave no explanation for. And so I just want to emphasize finally that just because counsel did a decent job in some respects, doesn't mean that he was not ineffective. And in Bryant, it was a reversal for ineffectiveness. One of the reasons the court found prejudice is because counsel had done a very good job of impeaching the key state witness, and the court found it to be a close case because of that impeachment, and reversed because of counsel's ineffectiveness in other respects, and failing to support his theory. So for those reasons, and the reasons mentioned in the brief, we'd ask that you reverse and remand for a new trial because Mr. Kirkland was denied the assistance of counsel guaranteed by the Sixth Amendment. Thank you. Thank you. I'm sure I speak for the others when I say that the case was very well argued and well briefed, and we will take it under advisement.